**FISHER et ux. v. GULF PRODUCTION CO.
(No. 685.)**

(Court of Civil Appeals of Texas. Beaumont.
May 18, 1921. Rehearing Denied
June 1, 1921.)

1. **Homestead ⟨key⟩122—Wife's right to homestead ceases on acquiring a new one, and husband's deed estops him.**

A husband, acting in good faith, may select the homestead of the family, and when he has acquired a new home, and his wife has removed with him to the newly acquired homestead, a prior deed made by him without her concurrence to the former homestead becomes as to the husband operative as an estoppel against his right to recover the property, and the wife's right, being that of homestead only, ceases when a new homestead has been acquired and she removes thereto.

2. **Homestead ⟨key⟩123—Acceptance of money held ratification of transaction barring action for misrepresentations.**

Where a husband and wife contracted to sell their homestead and the wife subsequently refused to join, notwithstanding that with the proceeds of the sale they had acquired a new homestead, and had removed thereto, their act in accepting the purchase money for the land with full knowledge of the material facts *held* a ratification, precluding them from recovering for false representations inducing the execution of the earnest money receipt by the wife.

3. **Cancellation of instruments ⟨key⟩37(4)—Pleading readiness to repay, if required, held not a tender.**

In a suit to cancel a deed on the ground that it was procured through misrepresentations, a statement in plaintiffs' petition that, if they were required to pay money received as a condition precedent to recovery they were ready to do so, *held* not a tender.

Appeal from District Court, Chambers County; D. F. Singleton, Judge.

Action by E. H. Fisher and wife against the Gulf Production Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

E. B. Pickett, Jr., and C. H. Cain, both of Liberty, for appellants.

J. Llewellyn, of Liberty, and D. Edw. Greer, of Houston, for appellee.

O'QUINN, J. Appellants, E. H. Fisher and Martha Fisher, husband and wife, brought this suit against appellee, Gulf Production Company, to set aside and cancel a deed of date October 31, 1918, to a tract of 69.72 acres of land, on the grounds of fraud, deception, and misrepresentation in the procurement of the deed.

The record does not disclose when this suit was filed, but on March 15, 1920, appellants filed their amended original petition herein, alleging fraud, deception, and misrepresenta-tion in the procurement of said deed, and that same was made to and operated upon Mrs. Martha Fisher, to the effect that she, having signed the earnest money receipt for the $50, was bound in law to sign the deed, and that she could be required to do so, and that she believed and relied upon said misrepresentations so made to her, and unwillingly signed said deed, and further alleging fraud, in that the deed contained a recitation that it conveyed all the land owned by appellants in Chambers county, and further that the stipulation in the assignments of Keeble to Mrs. Martha Fisher of his interest in the royalty in the oil produced on said land recited that it was not to become operative until appellee had received the sum of $35,000 in royalty out of and from oil produced by said land, which she did not understand was to have been in said assignment.

Appellee answered by general and special exceptions, general denial, and specially that, by reason of the uncertainty in the description and lines of the tract of land conveyed, the clause in said deed which recited all lands owned by appellants in Chambers county merely intended to include the one tract bought, and no more, and that it followed the descriptive clause in the contract of sale given in the earnest money receipt, and that the acknowledgment of Martha Fisher was regular on its face, and, believing it stated the truth, appellee paid appellants the full consideration called for in said deed, without notice or knowledge of any vice or irregularity in either the execution or acknowledgment of said deed, and that appellants, without any manner of protest or notice to appellee, accepted and ever since have retained the full sum of money paid by appellee as consideration for said land, and had purchased a new and permanent home therewith, where they were living long before and at the time of the trial, and that by the acceptance and retention of said money and the purchase and occupation of said new home appellants had fully ratified said deed and its acknowledgment, and were estopped to rescind said deed or to sue for said land. At the conclusion of the evidence, the court, on motion of appellee, instructed the jury to return a verdict in its favor, which was done, and judgment thereon entered for appellee, from which appellants have appealed.

Appellants present five assignments of error, all leveled at the action of the court in instructing a verdict for appellee, contending the same was error, and especially by reason that the evidence raised and supported (1) a question of fact as to whether Mrs. Martha Fisher's execution of the deed conveying her homestead to appellee was induced by fraud and misrepresentation; and (2) also as to whether certain conditions regarding the $1/_{192}$ royalty assigned to Mrs. Fisher were secretly and fraudulently inserted in said as-

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

signment. As we view the record and construe the law, there is but one question necessary to be discussed, and that is the effect of appellant's having acquired and removed to another home, after deeding the land in controversy to appellee.

The undisputed evidence shows that the land in question was the separate property of appellant E. H. Fisher, husband of appellant Mrs. Martha Fisher; that same was the homestead of appellants on October 26, 1918, and had been for many years; that in August, 1918, a well which was being drilled near their said homestead by Walter Keeble and others acting with him was brought in, producing a considerable quantity of oil, and has since continued to produce oil in paying quantities; that on October 26, 1918, appellants executed and delivered to said Walter Keeble an earnest money receipt for $50, in which they contracted to sell and to convey to said Walter Keeble the land in question for $31,860, the said sale and conveyance to be concluded within 15 days from the date of said receipt, the said receipt reciting that said land was all the land appellants owned in Chambers county; that the said land was at the time under lease to the United Petroleum Company, which said lease provided for the payment of a one-eighth royalty to the owners of the land; that Keeble and those with whom he was associated had agreed with appellee to convey the land to appellee, or to have same conveyed to it, subject to the lease contract with the United Petroleum Company, for $35,000, retaining a $1/_{32}$ royalty; that on October 31, 1918, in pursuance of said contract with Keeble, appellants executed and delivered to appellee, who was taking the same from Keeble, a general warranty deed in usual form, with joint and privy acknowledgments, to the land in question, for the said consideration of $31,860 cash, which was paid to appellants by appellee by draft on the South Texas Commercial National Bank of Houston, Tex., which said draft was accepted by appellants, duly indorsed by both, and cashed the next day; that shortly thereafter appellant E. H. Fisher purchased some 700 acres of land in Harris county, Tex., paying for same out of the money received from appellee for the land in question, and with his wife, Martha Fisher, removed to said land in Harris county, and have since that time occupied same as their home; that, at the time said deed to appellee was executed, appellant Mrs. Martha Fisher stated that she did not want to sign said deed, that she had backed out and was not going to sign same, and that they (she and her husband) were not getting enough for said land; that after considerable discussion, she contending that she was not going to sign the deed, and Keeble and others urging that, having signed the earnest money receipt, she was in law bound to sign said deed, she finally signed same, but testified on the trial that she did not willingly do so, and that she did not state to the officer taking her acknowledgment that she did not wish to retract it; that at the time appellants executed the said deed Keeble assigned his interest in the $1/_{32}$ royalty agreed to be paid to him and his associates to Mrs. Martha Fisher as an inducement for her to sign said deed, the same amounting to $1/_{192}$ royalty interest in the oil produced from said land, to become operative when appellee had received the sum of $35,000 as a royalty from said land.

The gist of appellants' propositions under their assignments of error is that a deed to the homestead, which has been procured by fraud and deception of the grantee practiced upon the grantors, and particularly upon the wife, is not a valid conveyance, the rule, both of law and in equity, being that fraud renders all contracts void ab initio, and the rule of law also being that the delivery of a deed which is not voluntary, but is brought about by misrepresentations of fraudulent deception, does not pass title, and especially asserting that the deed which Mrs. Fisher made to her homestead was void as to her rights, if same was procured by fraud of the grantee, or if her acknowledgment was not taken as required by statute, and appellee (grantee) had notice of such failure to comply with the statute in the taking of her acknowledgment, and further that, if said deed was procured by fraud, an estoppel could not be invoked against Mrs. Fisher.

To this contention appellee replies that a deed to the homestead, signed by the husband, even though not signed by the wife, becomes operative after the property is abandoned as a homestead, and the property could not be recovered by the husband because he is estopped by the deed, and could not be recovered by the wife because her homestead rights ceased when her husband acquired, and she removed with him to, another homestead, and that, as the land in question was the separate property of appellant E. H. Fisher, and he having legally bound himself to convey same to Keeble or his heirs or assigns by the contract evidenced by the earnest money receipt, and as he had procured a new home, and with his wife was living thereon, that said contract to convey was enforceable at the time of the filing of this suit, and the trial of same, had it not already been consummated, for the reason that the land involved was no longer the homestead of appellants.

There is no evidence to show, nor do appellants contend, that any fraud was perpetrated or attempted as to appellant E. H. Fisher, either in the making of the contract to sell or in the execution of the deed. No fraud is charged as to the execution by Mrs. Fisher of the contract of sale, but said charges of fraud are confined entirely to the

procurement of her signature to and acknowledgment of the deed in question. No fraud is charged as to the conduct of E. H. Fisher toward his wife, Martha Fisher, relative to the execution of either the contract to sell or the deed in question. There is no intimation, either in the pleadings or the proof that he in any manner attempted any fraud upon her rights; but, to the contrary, the record shows he acted perfectly open, frank, and honorable with his wife throughout.

[1] We believe that the contention of appellant is well taken. It is the well-settled law of this state that the husband, acting in good faith, may select the homestead of the family, and that when he has acquired a new home, and his wife has removed with him to the newly acquired homestead, a prior deed made by him without her concurrence, to the former homestead, becomes operative as to the husband as an estoppel against his right to recover the property, and the wife's right, being that of homestead only, ceases when a new homestead has been acquired and she removes thereto. Marler v. Handy, 88 Tex. 421, 31 S. W. 636; Slavin v. Wheeler, 61 Tex. 654; Parker v. Schrimsher, 172 S. W. 175; Irion v. Mills, 41 Tex. 310; Hudgins v. Thompson, 211 S. W. 586; Smith v. Uzzell, 56 Tex. 315; Wynne v. Hudson, 66 Tex. 9, 17 S. W. 110; Randleman v. Cargile, 163 S. W. 352.

[2, 3] Again, appellants having accepted the purchase money for the land (their homestead) with full knowledge of all the material facts concerning the execution of the contract of sale (earnest money receipt) and the final deed of conveyance, and having retained same and purchased a new home therewith, to which they have removed and on which they have since lived, and having never at any time made any actual tender of said money back to appellee, or to any one (the statement in their petition that, should the court hold that they were required to repay said money as a condition precedent to recovering the land, then they are ready to do so; is not even an offer to do equity or refund the money, but only a statement by way of pleading, and is not a tender), is in our opinion a ratification of said sale and deed, and precludes appellants from recovering herein. As apropos to this case, we quote Judge Reese in Burke-Mobray v. Ellis, 44 Tex. Civ. App. 24, 97 S. W. 322, a case in some features very similar to the instant case. He says:

"The undisputed evidence shows that appellant accepted the purchase price of the land from Roberts with full knowledge of all the material facts concerning the sale, protesting only that she had rather Roberts had not sold the land. It is true that appellant testified that she took the money with the sole intention of paying it back to Ellis if he would take it, and that she at once put it in the bank; but she kept it, and never at any time made any actual tender of it to Ellis. It remained in her possession and subject at all times to whatever disposition she chose to make of it, from the time it was paid to her in the early part of May, 1901, until paid into the registry of the court on April 27, 1905. She gave no notice to Ellis of her intention for nearly a month after receiving the money. The mere offer to do equity by the payment of money to Ellis as contained in her petition was not, in the circumstances, sufficient. If the bare acceptance of the money from Roberts did not constitute such a ratification of the delivery of the deed as to bind appellant, her subsequent conduct with regard to it would do so. If it be true, as testified by her, that she accepted the money for the sole purpose of repaying it to Ellis, it was incumbent upon her at once to disavow the sale to Ellis, and tender back the money, and to follow up such tender by depositing the money in the registry of the court, when the suit was filed. She was seeking affirmative relief of a court of equity in the cancellation of the deed, and it was incumbent upon her promptly to tender the money to Ellis, and upon his refusal to take it to place it beyond her own control, and subject to the control of the court, for Ellis, upon a determination of the suit in her favor. Weaver v. Nugent, 72 Texas, 277, 10 S. W. 458, 13 Am. St. Rep. 792; Werner v. Tuch (N. Y.) 27 N. E. 845, 24 Am. St. Rep. 443. As it is, appellant, knowing that the value of her land was wildly fluctuating on account of the excitement from the prospect of obtaining oil at Sour Lake, kept herself in a position, at all times, from the receipt of the money until the actual payment into the registry of the court four years afterwards, either to press her suit for the land, or abandon it and keep the money. If, by any chance, the land had so depreciated in value during these four years as that it would have made it to her advantage to keep the money, which might have happened, appellant could have abandoned her suit and kept the money, and appellees could not have helped themselves. She kept herself in a position to take advantage either of a fall in the value of the land by keeping the money and abandoning her claim to the land, or a rise in such value by prosecuting her claim. This was entirely inconsistent with what was required of her to entitle her to relief from a court of equity by a cancellation of the deed and a recovery of the land. Under the undisputed evidence upon this point, appellants were not entitled to recover, and the court did not err in so instructing the jury."

Usually, abandonment and estoppel are questions of fact for the jury to find, and the court is not authorized to take same from the jury and instruct a verdict; but, as in this case, when the acquisition of the new home is not disputed, but admitted, and where the fact of retention of the purchase money and acquisition of a new home therewith is not questioned, but is also admitted, then the facts are found, and the court is authorized to apply the law to the facts and direct the verdict.

This case does not come within the rule where the husband has acted in fraud of the rights of the wife with regard to the sale of

the homestead, nor that other rule where mortgages or other liens have been attempted to be given on the property while same is actually the homestead.

Finding no reversible error in the record, the judgment is affirmed.